ORIGINAL

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
```

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 3/23/21
```

WILMINGTON TRUST, N.A., as successor to Wilmington Trust Retirement and Institutional Services Company,

                Plaintiff,

    - against -

**STOUT RISIUS ROSS, INC.**,

                Defendant.

20 Civ. 2505 (LLS)

**OPINION & ORDER**

Defendant Stout Risius Ross, Inc. moves to dismiss plaintiff Wilmington Trust, N.A.'s complaint (Dkt. No. 18) under Federal Rule of Civil Procedure 12(b)(6).

For the following reasons, the motion (Dkt. No. 23) is granted, dismissing Wilmington's breach of contract and negligence claims, and denied as to its contribution claim.

## BACKGROUND[1]

In early October 2013, Constellis Group, Inc. decided to form an Employee Stock Ownership Plan ("ESOP"). Brundle, 241 F. Supp. 3d at 642. Constellis's owners sold their shares in the company to the ESOP, which held the stock in trust for Constellis's employees. Id. at 613-14.

---

[1] The facts in this opinion are drawn from the complaint and the district and appellate court opinions on which this case is based and the complaint relies. See Brundle v. Wilmington Tr., N.A., 241 F. Supp. 3d 610 (E.D. Va. 2017), aff'd, 919 F.3d 763 (4th Cir. 2019).

Constellis hired Wilmington to be the ESOP's trustee, and Wilmington hired Stout to give the ESOP financial advice regarding its purchase of the company. Id. at 616-17. On November 12, 2013, Stout gave Wilmington its draft valuation report, in which Stout determined that Constellis's rounded median fair market value of equity per share was $4,235. Id. at 620-21.

Wilmington hurried to complete the sale by the end of 2013 so that Constellis and the sellers could realize their expected tax advantages for that year. Id. at 621-22. Wilmington and Constellis agreed on a purchase price of $4,235 per share on November 15. Id. at 622-23. The transaction closed on December 20, 2013. Id. at 625.

Former Constellis employee Tim P. Brundle sued Wilmington in the United States District Court for the Eastern District of Virginia in 2015, alleging that Wilmington's negligence caused the ESOP to overpay $103,862,000 for Constellis's stock, for which Wilmington was liable under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1106. Id. at 613 & n.2.

The District Court found that Wilmington's reliance on Stout's report -- which contained four detectable defects -- led the ESOP to overpay $29,773,250.00 for Constellis's stock, and

held Wilmington in violation of ERISA, 29 U.S.C. § 1106(a)(1)(A). See id. at 634, 648. The Court summarized Wilmington and Stout's failures:

> Specifically, Wilmington has not demonstrated that its reliance on SRR's report was "reasonably justified" in light of all the circumstances because it has not shown that it thoroughly probed the gaps and internal inconsistencies in that report. Four major failures stand out: the failure to consider the 2013 McLean report; the failure to probe SRR's reliance on management's representations and projections; the failure to investigate the appropriateness of SRR increasing the value of Constellis by applying a control premium; and the failure to probe SRR's practice of rounding numbers up, thereby increasing Constellis' value. Although these failings independently might not be sufficient to conclude that Wilmington failed to meet its duty, cumulatively they demonstrate that Wilmington was not sufficiently engaged in the Constellis transaction, which was rushed to be completed by the end of 2013.

Id. at 643.

The District Court entered judgment for the ESOP in the amount of $29,773,250.00. See id. at 649-50. The United States Court of Appeals for the Fourth Circuit affirmed. Brundle, 919 F.3d 763 (4th Cir. 2019). Wilmington then paid the judgment. Notice of Satis. of Js., Brundle, 1:15-cv-1494 (LMB/IDD), Dkt. 451 (E.D. Va. Aug. 23, 2019).

Wilmington now seeks to recover from Stout some or all of the nearly $30 million Wilmington paid to satisfy the Brundle judgment. Based on the defects the District Court found in

-3-

Stout's report, Wilmington alleges Stout breached its contract and common law duties it owed Wilmington.

For the reasons set forth below, those claims are barred by Delaware's statute of limitations, 10 Del. C. § 8106, which subjects contract claims, as well as negligence claims, to a three-year limitation period.

Wilmington has, however, adequately stated a claim to recover Stout's share of the Brundle judgment under New York's statutory cause of action for contribution, N.Y. C.P.L.R. §§ 1401-04.

## DISCUSSION

### Breach of Contract

"Under C.P.L.R. § 202, when a nonresident plaintiff sues upon a cause of action that arose outside of New York, the court must apply the shorter limitations period, including all relevant tolling provisions, of either: (1) New York; or (2) the state where the cause of action accrued." Stuart v. Am. Cyanamid Co., 158 F.3d 622, 627 (2d Cir. 1998). The parties agree that Delaware's three-year statute of limitations, 10 Del. C. § 8106, not New York's six-year statute of limitations, N.Y. C.P.L.R. § 213, applies to Wilmington's breach of contract claim. Pl.'s Opp'n Mem. at 8-9. They also agree that the claim accrued when the parties entered their contract, more than three years before Wilmington brought this action. Id. at 9.

Wilmington argues that the limitations period for its breach of contract claim was tolled until, at earliest, the March 2017 Brundle verdict, because "Stout's expertise and assurances create a plausible inference that Wilmington was blamelessly ignorant of Stout's errors." Id. at 12.

Wilmington's ignorance of the defects in Stout's report was not blameless -- the District Court held Wilmington liable for breaching its fiduciary duties to the ESOP because Wilmington negligently failed to discover the deficiencies in Stout's report. See, e.g., Brundle 241 F. Supp. 3d at 634 ("When reviewing SRR's 2013 valuation, no one from Wilmington ever asked to see the McLean report, even though the FSSC knew of its existence."), 636 ("Wilmington had an obligation to probe SRR's choice to rely on those projections. The record shows that there were several red flags indicating that these projections were inflated, which Wilmington either ignored or downplayed."), 639 ("The Court finds that there was no reasonable basis for SRR's decision to apply the control premium as it did and that Wilmington breached its fiduciary obligation in failing to vigorously question this aspect of SRR's report."), 648 ("SRR has not provided any explanation for why it chose to round up rather than round down, and Wilmington breached its fiduciary duty to the ESOP by not objecting to SRR's approach.").

Therefore, the limitations period for Wilmington's breach of contract claim was not tolled, and Delaware's three-year statute of limitations bars that claim.

### Negligence

The parties also agree that Delaware's three-year statute of limitations applies to Wilmington's negligence claim. Pl.'s Opp'n Mem. at 8-9.

Wilmington contends that its negligence claim did not accrue until the March 2017 Brundle verdict, because "Before that point, Stout had merely exposed Wilmington to a risk of future loss." Pl's Opp'n at 17.

Under Delaware law,

> A cause of action in tort accrues at the moment when "an injury, although slight, is sustained in consequence of the wrongful act of another . . . ." 51 Am. Jur. 2d Limitation of Actions § 135. "It is not required that all the damages resulting from the act shall have been sustained at that time, and the running of the statute is not postponed by the fact that the actual or substantial damages do not occur until a later date." Id.

Kaufman v. C.L. McCabe & Sons, Inc., 603 A.2d 831, 834 (Del. 1992).

The filing of the Brundle action injured Wilmington. Once the charges against Wilmington were publicly articulated in a legal complaint, it could have brought a third-party claim against Stout in that action, or a separate breach of contract

and negligence action against Stout. It did not have to wait to sue Stout until the Brundle verdict had been reached.

The limitations period for Wilmington's negligence claim thus began to run on November 10, 2015, when the Brundle action was commenced. The limitations period for that claim was not tolled, because just as with its breach of contract claim, Wilmington was not blamelessly ignorant of Stout's alleged negligence.

Delaware's three-year statute of limitations bars Wilmington's negligence claim.

### Contribution

As stated by defendant, "There is no dispute that Plaintiff's contribution claim accrued upon its payment of the Brundle judgment on August 23, 2019. The contribution claim is therefore timely under the applicable limitations periods both of New York and Delaware." Its Mem. at 16 n.9.

Stout argues that Wilmington's state-law contribution claim is preempted by ERISA, which states in pertinent part, "the provisions of this subchapter and subchapter III shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan . . . ." 29 U.S.C. § 1144. Stout contends that ERISA preempts Wilmington's contribution claim because that claim seeks to recover on a judgment for breach of ERISA-imposed fiduciary duties.

ERISA does not bar Wilmington's contribution claim against a non-fiduciary merely because the judgment for which Wilmington seeks recovery is based on an ERISA violation.

In Gerosa v. Savasta & Co., 329 F.3d 317 (2d Cir. 2003), pension plan trustees brought a state-law professional malpractice claim against the plan's actuary for incorrectly reporting that the plan was over-funded, which caused the plan to face a financial shortfall. The Second Circuit reversed the District Court's dismissal of that claim, holding that "ERISA does not preempt 'run-of-the-mill' state-law professional negligence claims against non-fiduciaries" because Congress did not intend for ERISA to completely immunize non-fiduciary plan advisors from damages claims. Id., 329 F.3d at 323.

Similarly in this case, a holding that ERISA preempts Wilmington's contribution claim would immunize Stout from liability for breaching its common law duties.

As stated by the Second Circuit in Gerosa, supra, 329 F.3d at 328:

> First, even assuming that ERISA does create any meaningful and enforceable standards for actuarial behavior, those provisions have little to do with the conduct of the plan or its sponsors. See LeBlanc v. Cahill, 153 F.3d 134, 147-48 (4th Cir. 1998). There is no danger, for instance, that the plan will be subject to two sets of inconsistent state obligations. Id. And, as we have said, ERISA does not create a "fully insulated legal world" for plans; they must deal with outsiders, such as landlords or debt-collectors, under the same diverse hodge-podge of state law as any other

-8-

economic actor. Rebaldo v. Cuomo, 749 F.2d 133, 138 (2d Cir. 1984), cert. denied, 472 U.S. 1008, 105 S. Ct. 2702, 86 L. Ed. 2d 718 (1985); see also LeBlanc, 153 F.3d at 148 (rejecting preemption argument where "the Pension Fund is simply in the role of an investor allegedly wronged").

Twelve years earlier, that Court had summarized, in Chemung Canal Tr. Co. v. Sovran Bank/Md., 939 F.2d 12, 16 (2d Cir. 1991):

> We see no reason to reject contribution as an equitable means of apportioning wrongdoing in this context. Although it is arguable that injecting contribution claims into an already complex area of litigation will only further complicate matters and build costs, we think that even a breaching fiduciary should be entitled to the protection of contribution that has been traditionally granted fiduciary defendants under the equitable provisions of trust law. There is no reason why a single fiduciary who is only partially responsible for a loss should bear its full brunt.

**CONCLUSION**

The other alleged causes of action being dismissed, the case will proceed on Wilmington's claim for contribution.

So ordered.

Dated:   New York, New York
         March 23, 2020

                                    /s/ Louis L. Stanton
                                    LOUIS L. STANTON
                                    U.S.D.J.